Grundy County *v.* Tennessee Coal, etc., Co.

GRUNDY COUNTY *v.* TENNESSEE COAL, ETC., CO.

(*Nashville.* January 19, 1895.)

1. ASSIGNMENTS OF ERROR. *Insufficient, when.*

Assignments of error are insufficient that do not specifically point out the errors complained of. Three examples of insufficient assignments will be found in the opinion in this case. (*Post, pp. 298, 303, 323–327.*)

2. BACK TAXES. *Statutes authorizing assessment of, constitutional.*

The constitutionality of our statutes authorizing assessment and collection of back taxes reaffirmed. (*Post, p. 304.*)

Acts cited: Acts 1879, Ch. 79; Acts 1883, Ch. 181; Acts 1885, Ch. 23.

Code cited: §§ 664–668 (M. & V.).

Cases cited and approved: Wilson *v.* Benton, 11 Lea, 51, 56; Street Railroad *v.* Morrow, 87 Tenn., 420; Shelby County *v.* Railroad, 16 Lea, 401; Railroad *v.* Lauderdale County, 16 Lea, 688; State *v.* Railroad, 14 Lea, 56; Iron Co. *v.* Pace, 89 Tenn., 707.

3. SAME. *Evidence requisite in suit for.*

In suit for assessed back taxes, the assessment, under our statutes, is conclusive as to the valuation put upon the property, but not as to the right of the State or county to assess and collect the tax. Revaluation can be had only by appeal from the assessment to the Judge or Chairman of the County Court, and the taxpayer must show such appeal affirmatively. (*Post, pp. 304–307.*)

Code construed: § 664 (M. & V.).

Cases cited and approved: Franklin County *v.* Railroad, 12 Lea, 528; Shelby County *v.* Railroad, 16 Lea, 413; Railroad *v.* Lauderdale County, 16 Lea, 692; Knight, *ex parte,* 3 Lea, 401; 121 U. S., 535.

4. SAME. *Suit for, when brought.*

Suit for back taxes, where the right to assess and collect the tax is disputed, may be brought before a Justice of the Peace, as the Act provides, or in the Chancery Court. (*Post, p. 305.*)

Case cited and approved: State *v.* Railroad, 14 Lea, 56.

Grundy County *v.* Tennessee Coal, etc., Co.

5. SAME. *Assessment valid, when.*

An assessment of back taxes, made by the proper officer upon legal notice and hearing, and written out in proper form and signed, is valid, although the Assessor may have failed to enter it upon record as prescribed by law. (*Post, p. 307.*)

Code construed: § 668 (M. & V.).

Case cited and approved: Wilson *v.* Benton, 11 Lea, 55.

6. CORPORATIONS. *Domicile.*

The domicile for purposes of taxation of a domestic corporation is, in the absence of other controlling charter or statutory provision, at the place fixed for the regular meetings of the stockholders, although its directors may meet, its officers reside, and much of its business be transacted at other places in and out of the State, where it likewise had offices. (*Post, pp. 307–309.*)

7. SAME. *Situs for taxation of intangible personalty.*

The owner's domicile is the situs for taxation of the intangible personal property, such as money on deposit, notes, accounts, etc., belonging to a domestic corporation, wherever same may be situated or created, where the statutes have not fixed a different situs. (*Post, pp. 309–318.*)

Cases cited and approved: Mayor *v.* Alexander, 10 Lea, 477; Mayor *v.* Thomas, 5 Cold., 607; Railroad *v.* Morrow, 87 Tenn., 434; Conner v. Apperson, 14 Lea, 588; 104 U. S., 592; 100 U. S., 491; 56 Am. Dec., 529.

8. SAME. *Same.*

Our assessment laws have not fixed a situs, different from the domicile of the owner, for the taxation of the intangible personal property of domestic corporations. (*Post, pp. 318–322.*)

Acts construed: Acts 1889, Ch. 96, Secs. 4, 5, 13, 14; Acts 1890 (Ex. Sess.), Ch. 29, Sec. 26; Acts 1891 (Ex. Sess.), Ch. 26, Sec. 8.

9. TAX ASSESSMENTS. *Not void by reason of Assessor's interest.*

A tax assessment, or the statute authorizing it, is not void by reason of the fact that the compensation of the Assessor is fixed in proportion to the amount of the taxes assessed, collected, and paid over. The Tax Assessor is not the Judge of any Court within the meaning of that provision of the State Constitution forbidding Judges to preside in causes where they may be interested. The "due process" clause of the Four-

Grundy County *v.* Tennessee Coal, etc., Co.

teenth Amendment of the Federal Constitution is not violated by such statute or assessment. (*Post, pp. 323–327.*)

Constitutions construed: Federal Constitution, Fourteenth Amendment; State Constitution, Art. VI., § 11.

Act construed: Acts 1890 (Ex. Sess.), Ch. 30, Sec. 1.

10. JUDGMENT. *Rendered by disqualified Judge valid unless objection was made.*

A judgment is valid, though rendered by a Judge who was disqualified by interest, unless objection was taken on account of such disqualification. (*Post, pp. 325, 326.*)

Cases cited and approved: Holmes *v.* Eason, 8 Lea, 754; Posey *v.* Eaton, 9 Lea, 500.

11. ASSESSMENT. *Method applied to corporations approved.*

The Court says: "The manner adopted by the Acts of Tennessee to arrive at the taxable value of the property of a corporation by taking into account its stock and bonded debt, has been approved as legal by the Supreme Court of the United States in the Railroad Tax Cases, 92 U. S., 604, and is neither arbitrary nor double taxation." (*Post, p. 327.*)

---

## FROM GRUNDY.

---

Appeal from Chancery Court of Grundy County. T. M. McCONNELL, Ch.

GRANBERY & MARKS, L. V. WOODLEE, and T. C. LIND for Grundy County.

SMITH & DICKINSON, STEGER, WASHINGTON & JACKSON for Tennessee Coal, etc., Co.

WILKES, J. This bill was filed August 7, 1894, in the Chancery Court of Grundy County, to col-

lect certain taxes assessed for county purposes by the Trustee as back tax collector for the years 1891, 1892, and 1893. The bill was demurred to, and the demurrer was overruled, but no errors are assigned on that account. An answer and cross bill were filed, and the latter was answered, and proof was taken. Upon the hearing, the Chancellor decreed that complainant was entitled to the relief sought, and gave judgment in favor of complainant against appellant for the taxes as assessed against it and as shown in the bill, in the sum of $25,947.75, with interest from June 5, 1894—$583.82—making together the sum of $26,531.57, and for all costs. He dismissed the cross bill and overruled the demurrer. To all of this appellant excepted, and prayed an appeal, which was granted.

The errors assigned are as follows:

1. The Chancellor erred in giving complainant judgment for all or any part of the taxes so assessed.

2. He erred in dismissing cross bill of appellant, and in not sustaining the same, and enjoining the complainant from collecting all or any part of the taxes so assessed.

3. He erred because he did not dismiss complainant's bill for the reason that the bill set up the validity of said assessment and the steps essential to its validity, and, among them, that notice had been given to defendant of said proposed assessment, and that said assessment was entered on

the assessment book, and became a record of the county, and that it was unappealed from and final, and because appellant denied all such allegations in the bill, and complainant did not prove the same; and there is no evidence to 'show that appellant was cited to appear before said assessor for the purpose of being assessed, and none that said assessment is unappealed from and final, and therefore complainant cannot recover in an action founded on proceedings in which he fails to show such jurisdictional facts.

4. The Chancellor erred in that he held that the property assessed was subject to taxation in Grundy County, Tenn., whereas, the bill alleged that the said property was in Grundy County, Tenn., in the respective years for which it was taxed, and the answer denied the same, and there was no proof whatever to sustain said allegation of the bill; but, on the contrary, the proof showed conclusively that the property was not in said county in the said years for which it was taxed.

5. He erred in not dismissing the bill for the reason that the bill alleged, and the proof showed, that certain property of the character back assessed for the years 1891, 1892, and 1893 had been already assessed by said county for said years respectively, and the taxes had been paid on the same by appellant; and the answer denied the property sought to be back assessed was in said county in said years, and there was no proof to show that appellant had

in said county in said years respectively, more prop-
erty of the character of that back assessed than had
been actually assessed by said county previously for
said years respectively, to appellant upon which the
taxes so assessed had been paid.

6.   He erred because he, in effect, held that the
domicile of appellant for the years 1891, 1892, and
1893 was in Grundy County, Tenn., and that, by
virtue of this fact, all the cash, bills receivable,
notes, and accounts, wheresoever situated, and out-
side of Grundy County, and whether in the State
of · Tennessee or not, were assessable for taxation in
Grundy County; whereas, according to the true in-
tent and legal effect of the assessment laws of the
State of Tennessee which were in force for the as-
sessment of property for said years respectively, all
such property was, for said years, assessable and
taxable in the several counties in the State where
it was located, and not otherwise.

7. The Chancellor erred in holding, in effect, that
Section 25, Chapter 105, Acts 1883, Sections 26, 71,
and 72, of Chapter 96 of the Acts of 1889, and
Section 19, Chapter 26, of Acts of 1891 (Extra Ses-
sion), which were in force at the time said assessment
for said years was made, were constitutional; whereas,
the effect of said sections was to create a Court to
try and decide causes, and make the Trustee *ex officio*
the Judge to finally hear and determine the cause,
and issue execution upon his judgment.   The Trus-
tee, under said Acts, was authorized to render a judg-

ment fixing the amount of the assessment, and this was such a judgment as authorized and sustained a distress warrant. Said Section 26 gives the Trustee a direct interest in the result of his judgment, proportioned to the amount of it. It is a violation of Article VI., Section 11, of the Constitution of Tennessee, that a Judge shall preside in the trial of any cause in the event of which he shall be interested. Said Acts are also in violation of the Fourteenth Amendment to the Constitution of the United States.

8. The Chancellor erred in that he did not hold that action of the Assessor was not final, and that, inasmuch as the right of Grundy County to assess the property which the Assessor endeavored to assess was denied by the answer, the Court could, and of right should, determine, regardless of the action of said Assessor, whether or not the said property was assessable for taxation in Grundy County, and because he did not hold that the said property was not so assessable for the reason that it was not located in Grundy County.

9. He erred in not sustaining the cross bill, on the grounds that said assessment was void, because the property so sought to be assessed was not located in Grundy County, and was not taxable therein.

10. The Chancellor erred in not dismissing the bill and in not sustaining the cross bill, because, under the law for the assessment of property, in force in Tennessee for said years, the said property sought to be assessed by Grundy County was assessable and

taxable in the several counties in Tennessee where it was respectively located, and because it was so assessed in said counties, as shown by the proof, and the taxes were paid thereon, and the assessment of the said property in these proceedings would subject appellant to double taxation on said property for said years.

11. The Chancellor erred in not holding that Section 13 of the Acts of 1889, and Section 8 of the Acts of the Extra Session of 1891 were unconstitutional, and that they conflict with Article XIV., Section 1, of the Federal Constitution, which forbids any State to deny to any person within its jurisdiction the equal protection of the law. The object of such constitutional provision is to secure equality and uniformity, and arbitrary or artificial rules for the estimation of values cannot be adopted, nor can artificial values be attached to property subject to taxation. The Acts under which the assessment in question was attempted authorize the property of a corporaration owning property in more than one county to be assessed at more than its value. They authorize the Assessor to disregard the value of the property in his county, and make a valuation upon it for taxation which is arbitrary, artificial, and unjust. Said Acts discriminate in favor of individuals as against corporations, in that they fix a rate of taxation for the former that is higher and different from that applicable to the latter. Said Article XIV. secures to corporations, as well as individuals,

the equal protection of the law, and forbids une-
qual exactions of any kind, among them unequal
taxation.

It is not necessary to notice specially the first
and second assignments, as they are too general to
come within the rule, and are disposed of in the
general result of the ruling upon the other assign-
ments.    The third assignment is, in effect, that the
necessary evidence is not before the Court to enable
it to determine the validity of the assessment.

Under this assignment it becomes necessary to ex-
amine the several Acts under which the assessment
was made, especially the Acts of 1879, Chapter 79,
as amended by the Acts of 1883, Chapter 181, and
Acts of 1885, Chapter 23.    The authority to make
such back tax assessments and the mode of proceed-
ing are set out in these Acts.    It is provided that—

*First.*—If the owner of the property admits the
liability of the property to taxation as assessed, but
disputes the amount of assessment, he may have a
revaluation before the Judge or Chairman of the
County Court at any time within one month, and,
in such case, the Judge or Chairman may hear
proof and fix the assessment or valuation, and the
same shall be final.    M. & V. Code, § 664.

*Second.*—If the owner denies the right to tax
the property, but raises no question as to value,
then the collector shall submit the facts to the Judge
or Chairman of the County Court as to the county
taxes, and, if directed by such Judge or Chairman,

he shall bring suit before a Justice of the Peace for the taxes without regard to the amount, and the matter shall be tried without delay, with right of appeal to each party, and a speedy trial shall be had. Code (M. & V.), § 664.

*Third.*—If both the amount and the right to tax are disputed, the owner shall have ten days to have a reassessment before the Judge or Chairman of the County Court as to county taxes, and, at the end of ten days, the collector shall proceed as provided in cases where the right to tax is alone questioned. Acts of 1879, Ch. 79; Code (M. & V.), §§ 666 and 667.

These Acts have been held to be constitutional. *Wilson* v. *Benton*, 11 Lea, 51, 56; *Railroad* v. *Morrow*, 3 Pickle, 420. And otherwise construed in *Shelby County* v. *Railroad*, 16 Lea, 401; *Chesapeake & Ohio Railroad Co.* v. *Lauderdale County*, 16 Lea, 688; *State* v. *Railroad Co.*, 14 Lea, 56; *Iron Co.* v. *Pace*, 5 Pickle, 707.

We think the proper construction of these Acts is that, in all contests over the valuation of the property, it is incumbent on the owner to have a reassessment made, and, in case he fail to do so, the assessment, so far as valuation is concerned, becomes final. But where the right to assess and tax is questioned, it is incumbent on the collector to bring suit to test this right, and upon the bringing of such suit all questions legitimately bearing upon the right to tax are open for contest and adjudication,

and this would include all questions not pertaining to valuation, the latter being concluded by the failure to apply for a reassessment. This suit, to determine the right to tax, may be brought before a Justice of the Peace as the Act provides, or it may be brought in the Chancery Court. *State* v. *Railroad,* 14 Lea, 56.

Under this holding, much of the controversy in this case, touching the effect to be given the assessment made by the collector, is eliminated, as the proceeding before the Assessor, if warranted by law, becomes conclusive and final so far as the valuation fixed by him upon the property is involved, unless the defendant had made an application to the County Judge, or Chairman of the County Court, for a revaluation, which was not done in this case. But while the proceeding is conclusive in the absence of such application to revalue, so far as the value of the property is concerned, it is not conclusive as to the right of the county to assess and collect the tax, and every matter involved in that right may be inquired into in this suit. M. & V. Code, § 664; Welty on Assessment, Sec. 137–8; Cooley on Taxation, p. 798; *Franklin County* v. *Railroad,* 12 Lea, 528; *Shelby County* v. *Railroad,* 16 Lea, 413; *Railroad Co.* v. *Lauderdale County,* 16 Lea, 692; *Knight, ex parte,* 3 Lea, 401; *Stanly* v. *Albany County,* 121 U. S., 535.

The bill in the cause charges that the assessment was made as provided by law, and sets it out ver-

batim. The answer admits that it was in form as set out in the bill; that it was written out and signed by the County Trustee on June 5, 1894. It then proceeds to deny the legality of the assessment, or its entry upon proper books, or that it became a county record, and denies that the statements made are true or based upon evidence, but were contrary to and against the evidence submitted to the Trustee. The answer then proceeds to set out. in detail which of the recitals in the assessment are untrue, and says that evidence was furnished to the Trustee, showing the statements in the assessments to be untrue. It proceeds to deny the right of the county to assess the property, and that the assessment was legal, but it does not expressly deny that the assessment was made as charged, nor that it had notice that such assessment was to be and was in fact made. The proof shows that the assessment was made upon evidence furnished by the secretary of the company, and taken from the annual reports of the company, and that the secretary of the company, in his examination, set up fully the grounds upon which it was insisted there was no liability to the tax.

From these statements in the answer, as well as the proof, it is apparent that the company had notice of the assessment made by the Trustee, and contested before him the right to tax, as well as gave evidence upon which the value of the property was fixed by the Assessor, and that such proceedings were had as made the assessment complete and

final as to valuation, unless the company, under the law, saw proper to appeal to the Chairman of the County Court for a revaluation of the property. If such appeal or application to revalue was made, it is incumbent on the company to show such fact. Whether we treat the appeal as a matter of record or as a fact, it would devolve upon the company to show such appeal, and not upon the county to show a negative—that is, a fact that did not exist.

The action of the Assessor must be considered conclusive upon the question of value, but upon the right to reassess and tax, that was left open for further investigation when suit was brought by the county to enforce it. It does not appear that the collector kept a book upon which he entered his assessment, as prescribed by § 668 (M. & V.) Code, but his assessment was written out in detail, as hereafter shown, with great minuteness and detail of recital. This was held sufficient in *Wilson* v. *Benton*, 11 Lea, 55. The main object of the provision, Section 668, is to furnish a record by which the Assessor may settle with the County Court, and evidently is intended to furnish the basis for such settlement, as it must contain not only the assessment, but also statement of the taxes collected. The failure to enter the assessment, as soon as made, upon such book, does not in any way affect its validity as against the property owner.

In our view of this case, the first question to be decided is the domicile of the company. It appears

that the company has offices at Tracy City, Nash-
ville, Cowan, South Pittsburg, Birmingham, New York,
and, perhaps, other places; that the meetings of the
board of directors are held in New York City,
and the stockholders' meetings at Tracy City,
Grundy County; that its president's and secretary's
offices are at Nashville, and that its obligations are
entered into, and its cash deposits are, mainly, at
that place. The charter itself does not fix the
domicile, or home office, but an amendment to
the same, adopted July 16, 1889, provides that
the biennial meetings of the stockholders shall be
held at Tracy City. The by-laws in force in 1889,
and up to April 10, 1893, provide that the com-
pany shall have offices at Tracy City, South Pitts-
burg, Nashville, Cowan, Pratt Mines, Ensley, Birming-
ham, New York, and such other places as the board
may establish, and on April 10, 1893, this provision
was so amended as to provide that the offices of
the company shall be at Tracy City, and at such
other places as the board of directors may establish.
Under this proof, we think the domicile of the com-
pany must be held to be in Tracy City, Grundy
County, Tennessee; that its primary governing and
controlling power is exercised, under its charter as
amended, at that place, and that it is so recognized
by the company.

"The principal office or place of business of a
corporation," says Desty on Taxation, Vol. I., p.
341, "is the residence of the corporation within the

meaning of the tax law in its provisions for taxation of the personal property of the company."

Welty on Assessments, p. 106, defines the residence of a corporation as follows: "The residence or domicile of a corporation has been defined to be where the governing power of the corporation is exercised; where those meet in council who have a right to control its affairs and prescribe what policy of the corporation shall be pursued, and not where the labor is performed in executing the requirements of the corporation in transacting its business. In order to determine the legal residence of a corporation, reference must be had to the place where its will is declared and made known, and not to the place where its mandates are obeyed or the business or labor transacted or performed which it authorizes or requires. It will be seen that this, too, is a question of fact, to be determined by the Assessor as in the case of natural persons."

With these preliminary questions settled, we come to the manner and mode in which the assessment was made, and the property which was assessed. The assessment, as made by the Trustee, is in the following words:

"In the matter of the back assessment of the Tennessee Coal, Iron & Railroad Company for the years 1891, 1892, and 1893, I was motioned by L. V. Woodlee, back tax collector for Grundy County, Tenn., to back assess the above-named company for the above-named years, both upon omitted property

and inadequately assessed property. I issued notice, and had the same served upon the company, to appear before me, at my office at Altamont, Tenn., on May 10, 1894. Upon that day the company appeared, and requested a continuance to the fourteenth. On that day, after hearing some of the facts with reference to the matter, the company again requested a further continuance until May 29, and, on that day, I heard additional facts with reference to the company's property.

"I find that on January 10, 1891, the company's shares of stock amounted to $10,000,000—$9,000,000 common stock and $1,000,000 preferred stock. I find that the actual value of the common stock at that time was thirty-five cents on the dollar, and the preferred stock was worth par. I find that on January 10, 1891, the bonded indebtedness of the company was $5,187,844, and was worth at that date ninety cents on the dollar.

"On January 10, 1892, I find that the shares of stock of the company was $10,000,000—$9,000,000 common and $1,000,000 preferred. The value of the common stock was forty cents on the dollar, and the preferred stock was worth ninety cents. The bonded indebtedness of the company at that date was $5,189,453, and was worth ninety cents on the dollar.

"On the tenth of January, 1893, I find that the shares of stock of the company was $20,000,000 common and $1,000,000 preferred stock. The value

of the common stock was thirty-five cents on the dollar, and the value of the preferred stock was ninety cents on the dollar. The bonded debt was $9,-198,428, and was worth ninety cents on the dollar.

"I find that the company has been paying taxes at an assessed value for the years 1891 and 1892, and on all of its properties everywhere, of less than $2,-000,000, and for the year 1893 less than $2,500,000.

"I find that the company is unable to separate the value of the property in the various States and counties in which it owns property. I am satisfied from the proof that the intangible property which is assessable in Grundy County, Tennessee, is very valuable, but, owing to the lack of information, I am unable to estimate its value for taxation.

"I find that the home office of the company is in Grundy County, Tennessee, and that the company is chartered under the laws of the State of Tennessee.

"I find from the proof that the ownership of all the properties together make their values much greater than they would be if owned by various persons, but the exact value to be placed on this element I am unable to ascertain.

"I find that on January 10, 1891, the company had on hand, in Grundy County, Tennessee: (1) Cash, $100,162.68; (2) open accounts on good and solvent parties, $633,665.02; (3) general supplies, consisting of sundry materials, not otherwise assessed, $12,331.16.

"I find that on January 10, 1892, the company had on hand, in Grundy County, Tennessee: (1) Cash

and bills receivable, $146,294.12; (2) accounts on good and solvent parties, $617,531.82; (3) general supplies, consisting of sundry materials, not otherwise assessed, $14,329.81.

"I find that on January 10, 1893, the company had on hand, in Grundy County, Tennessee: (1) Bills receivable on hand, $53,463.12; (2) cash, $98,810.87; (3) accounts on good and solvent parties, $1,425,-571.62; (4) general supplies, consisting of sundry materials, not otherwise assessed, $11,599.95.

"I therefore assess the Tennessee Coal, Iron & Railroad Company, a corporation chartered under the laws of the State of Tennessee, and having its principal office at Tracy City, Grundy County, Tennessee, upon the cash, open accounts, general supplies, consisting of sundry materials, not otherwise assessed for the year 1891, on a valuation of $714,505.86, and on the same character of property for the year 1892, on a valuation of $744,443.75, and for the year 1893, on the same character of property, on a valuation of $1,557,495.56. The amounts assessed under each of the above heads is above set out, and that is the property that is intended to be included in this assessment, after giving credits for each of the years by the amounts heretofore paid on. This is the only character of property intended to be embraced in this assessment and valued for assessment herein. Under the provisions of the Act of 1889, and the amendments thereto, providing for the assessment of properties of corporations, I em-

brace the foregoing items of assessment under the comprehensive term of "capital stock" of the Tennessee Coal, Iron & Railroad Company, in Grundy County, Tennessee, and not heretofore assessed, excluding therefrom all other property, except that specifically mentioned as being embraced therein.

"I hereby exclude from the assessment the State taxes, for the reason that I am informed that such taxes have heretofore been settled and compromised by the State and the company. As the result of the above statement, the total valuation of the above named property, which is embraced in this assessment as of January 10, 1891, is $714,505.86; January 10, 1892, $744,443.75; January 10, 1893, $1,-557,495.56. And I hereby assess said company as above stated for the taxes for the years named. This June 4, 1894."

It appears from this assessment that the Trustee, treating Grundy County as the domicile of the company, proceeded to estimate all its cash, notes, bills receivable, and other property specifically mentioned as legally if not actually situated in Grundy County, and proceeded to assess it as so much of the property entering into the capital stock of the company, which the Trustee was of opinion had been omitted to be estimated in the regular assessment. The value of the capital stock and bonded indebtedness of the company were found by him to be largely in excess of what it had been assessed for taxes. In other words, the Trustee found that for 1891 the

capital stock and bonded indebtedness of the company had been estimated for taxation purposes at less than two millions of dollars, when its market value was over seven millions; that for 1892 it had been assessed on a valuation of less than two millions, when its market value was over nine millions, and in 1893 it had been assessed at two and one half millions, when its market value was more than sixteen millions.

The Trustee also found the items of cash, open accounts, and general supplies for 1891 to be $746,-158.86, while it had been assessed on these accounts for only $31,653, leaving for reassessment for 1891, $714,505.86. For the year 1892, the items amounted to $778,155.75, while the assessment had been for only $33,712, leaving for reassessment for 1892, $744,443.75. For the year 1893, the items amounted to $1,589,445.56, while the assessment had been for only $31,950, leaving for reassessment for 1893, $1,557,495.56. And upon these amounts the reassessments were made for the respective years.

Passing the question of valuation, as having been conclusively settled by the proceeding before the Assessor, and the failure of the company. to apply for a reassessment, we come to the real questions at issue in the case, Whether such intangible property as choses in action, including cash on deposit, notes, bills receivable, and open accounts, is liable to assessment and subject to taxation; and, if so, what is the location of such property for purposes of

taxation? We are not now dealing with tangible property, real or personal, but only such items as are embraced in this assessment as intangible, and which may be comprehensively embraced in the term choses in action, as contradistinguished from specific personal or real property. It appears that this company owns valuable property, real and personal, in nine counties in Tennessee, eight in the State of Alabama, one each in the States of Georgia and Mississippi, and also in New York and Louisiana, and that its choses in action grow out of its operations in these several localities. The company separates its property into different divisions, and the operations are shown upon its books by these divisions.

As an illustration of the status of the items, we take the assessment for 1891:

| | |
|---|---:|
| Cash and bills receivable on hand at main and branch offices | $ 45,526 85 |
| In bank | 54,635 83 |
| Making an aggregate of | $100,162 68 |

Under the head of sundry debtors on open accounts:

| | |
|---|---:|
| Nashville office | $ 13,567 60 |
| Tracy City division | 40,672 12 |
| Cowan division | 49,935 62 |
| South Pittsburg division | 114,676 23 |
| Birmingham division | 77,727 79 |
| Pratt Mines division | 45,837 76 |
| Ensley division | 292,747 90 |
| | $635,165 02 |
| Less bad debt reserve fund (Ensley) | 1,500 00 |
| Total | $633,665 02 |

All of this was assessed as being on hand in Grundy County. Similar assessments were made for 1892 and 1893, the items in each instance being taken from the published balance sheets of the company, and embracing the operations of the different divisions in Tennessee and Alabama, the greater amounts being in the latter State. It has been for years, and is still, the policy of our revenue laws to tax all notes, duebills, negotiable paper, and accounts upon solvent persons or parties believed to be solvent, and all other assets, including cash on hand or on deposit or invested in any manner in this State or elsewhere, and the Acts in force for the years for which these taxes were assessed so expressly provide. Cash on deposit is, in legal effect, only a chose in action—that is, an indebtedness of the bank to the depositor, who has no interest in any specific money by virtue of his deposit, but only a right to check generally against the funds in the bank. *Marsh* v. *The Bank*, 34 Barb., 298; *Sneed* v. *The Seaman's Bank*, 37 Barb., 129; 2 Am. & Eng. Ency. Law, p. 93, note 94; Welty on Assessment, Sec. 39, p. 64; *Ib.*, Sec. 45, p. 99.

The rule of taxing choses in action applies as well to corporations as to individuals, and it was never intended to exempt corporations from taxation because of their extended operations, while individuals, operating in a limited territory, are to be taxed upon this species of property. It is difficult to see, under defendant's contention, how such choses in action, origi-

nating out of operations in other States, can be reached for taxation at all, as there is no location of such corporate assets in this State, unless it be at the legal domicile of the corporation. So, also, the same remark applies to choses in action arising out of operations in counties in the State other than that of the corporate domicile. These choses in action, when they come into existence by the sales of material, are not kept separate and distinct from each other, and in the separate divisions, when created, but they go into a general fund, to be applied to dividends or expenses generally of the company, without regard to the division where such choses in action and expenses originate or are incurred. The notes, duebills, accounts, and cash deposited, lose their local status when they are created, and have then only a general status dependent on the domicile of the corporation.

It is a general rule, recognized not only in this but in other States and in the United States Courts, that the situs of intangible personal property, such as choses in action, notes, accounts, etc., for the purpose of taxation, in absence of any statute fixing a different situs, is at the domicile of the owner. *Mayor* v. *Alexander*, 10 Lea, 477; *Mayor* v. *Thomas*, 5 Cold., 607; *Bonaparte* v. *Baltimore*, 104 U. S., 592; *Kirtland* v. *Hotchkiss*, 100 U. S., 491–499; *Cannon* v. *Apperson*, 14 Lea, 588; 56 Am. Dec., 529, 530, 531, notes.

If the Acts of the Legislature fail to fix the

location of such property for taxation, it is evident that it must be held to be the domicile of the owner, in cases of corporations as well as of individuals or. executors. 56 Am. Dec., 529, 530, 531; Welty on Assessments, Sec. 39, pp. 64, 65; Sec. 44, p. 84; Sec. 45, p. 99; Sec. 46, p. 103; *Street Railroad Co.* v. *Morrow*, 3 Pick., 434.

Unless we hold such intangible property to be legally situated and taxable at the domicile of the corporation where the statute does not prescribe a different situs, the effect will necessarily be to permit such as may be in other States, or even counties, to escape taxation altogether.

It cannot be held that the Assessor must hunt down and locate each note and duebill, and the cash that may, for convenience, be located in different banks, and, even if he must, still he would be stopped in his search by the lines of the State, and, so far as county revenue is concerned, by the lines of each county. Under such a construction, the company could place its notes and books of account in one of its offices in preference to another, or remove them to its New York or Birmingham office, and escape taxation altogether, as the Assessor could never locate this most difficult of all property by its actual situs.

Let us examine for a moment the several Acts which are claimed to bear upon this question of situs. The particular statutes under which the Trustee of Grundy County acted in making the assessment

in question are: Acts of 1889, Chapter 96, Section 13, and as amended by Acts of 1890 (Extra Session), Chapter 29, Section 26, and Acts of 1891 (Extra Session), Chapter 26, Section 8.

Subsection four of the Act of 1889, Section 4, prescribes that property shall be assessed in the district or ward in which it lies or is known to be • at the time of assessment. Special provisions are made regarding the taxation of street railroad companies, and subsection five relates to property of corporations and companies that lie wholly or mainly or whose chief business is within some incorporated city, taxing district, or town. We are of opinion that, under this Act, Section 4, real estate generally must be assessed where it lies, and tangible personal property where it is known to be at the time of assessment, but the location of choses in action is not fixed by express terms. Welty on Assessments, Sec. 39, note 5. See also Sec. 30, page 42.

Sections 13 and 14 of the same Act prescribe the manner in which the taxable value of the corporate property shall be ascertained, and Section 8 of the Acts of 1891 (Extra Session) prescribes the manner in which such values shall be apportioned in different localities.

If we concede that subsection four, Acts of 1889, was intended to apply to choses in action of a corporation, it cannot be construed to locate them elsewhere than at the domicile of the corporation. This domicile is the legal situs of such property, and is

the district or ward in which such property lies, or is known to be, in the sense of the statute. It cannot be where the debtor resides, nor where the notes or book of accounts may, for the time being, be deposited, but it is where the owner resides—that is, where the corporation has its domicile. Tangible personal property, or real estate, may lie or be found elsewhere, but choses in action lie and are known to be only at the domicile.

If we hold that subsection five applies, and that Tracy City is such city, taxing district, or town as the section contemplates, then the same result follows, as this property, under our view, lies wholly in such town or city, and its chief business is there, under our construction of the term chief business. If Tracy City be not held to be such incorporated town as the Act contemplates, then subsection five has no application in this case whatever. Moreover, Tracy City is not an incorporated town, city, or taxing district.

The material part of Section 8 of the Act of 1891 reads as follows: "All incorporated companies assessable under Sections 13 and 14 of the Act owning property in this and another State, or in one or more counties in this State, shall pay an *ad valorem* tax upon the full value of its capital stock (including its franchises, easements, and incorporeal rights and corporate property), which shall in no case be held or deemed to be less than the actual value of its bonded indebtedness; and the value of

the property of the corporation in the county where located shall not be assessed at less than the relative value of the property of the corporation as capitalized and bonded in the county where located bears to the entire value of the property of the corporation as capitalized and bonded," etc.

This Act does not attempt to fix the location of either tangible or intangible property for purposes of taxation, or to determine what property is located in any given county, but merely prescribes the method by which value is to be ascertained of whatever property may be in such county. The location of the property, tangible or intangible, being otherwise fixed, this section prescribes the rule to estimate and determine its value in each locality.

It is well to note that these several Acts do not proceed upon the idea of assessing the shares of stock of a corporation, and taxing them as such, but such stock, as well as the bonded indebtedness of the company, must be looked to in order to arrive at the value of the corporate property, including the franchises, easements, corporeal property, and incorporeal rights, all going to make up the value of its capital stock.

Two considerations are had: (1) That the entire property of the company shall be assessed and taxed upon a basis to be arrived at by taking into consideration its capital stock and bonded indebtedness; and (2) that, in each county where its property is located, the valuation shall be made in proportion to

21—10 P

the relative value which the property in that county bears to the value of the entire property. But none of these Acts fix in direct terms where the intangible, incorporeal property which enters into the value of the capital stock or corporate assets, such as notes and other choses in action, shall have their location for purposes of taxation, and the proper construction of these is that intangible property is assessable at the domicile.

We think it very apparent that these items of intangible property, embraced in this assessment by the Trustee, have not been elsewhere assessed to the company, and it is pertinent to remark that, if it is improper to assess them at the domicile of the company, it becomes impracticable to assess them anywhere else. Certainly, there is no warrant to assess them at Nashville or any of the other offices of the company, or in any one of its other divisions, and the location of such property, whether under these Acts or the general laws of the State, must be at the domicile of the company. It is evident the Assessor followed this view as to the construction of these Acts, as he assessed the tangible personal property, consisting of materials, etc., on hand in Grundy County, where it was known to be, but ignored such materials and tangible property as was known to be in the Cowan and other divisions outside of Grundy County, while he assessed the whole of the intangible property in that county.

The logic of appellant's contention is to draw all

personal property, both tangible and intangible, to Grundy County for purposes of taxation, as we consider that the main office, but we do not think this question arises in this case, as only intangible property is sought to be assessed, except that part of the tangible property actually in Grundy County.

But it is said "the Acts under which the assessment in question was attempted are unconstitutional, in this, that their effect was to create a Court to try and decide causes, and make the Trustee *ex officio* the Judge to finally hear and determine the cause, and issue execution upon his judgment. The Trustee, under said Acts, was authorized to render a decree fixing the amount of the assessment, and this was such a judgment as authorized and sustained a distress warrant.

"Said Acts give the Trustee a direct interest in the result of his judgment, proportioned to the amount of it, as his compensation is fixed by the amount of taxes assessed and collected and paid over.

"It is a violation of Article VI., Section 11, of the Constitution of Tennessee that any Judge shall preside in the trial of any case in the event of which he shall be interested. Said Acts are also in violation of the Fourteenth Amendment to the Constitution of the United States, because they authorize the taking of property of appellant 'without due process of law.' Property of a citizen taken from him by virtue of a judgment rendered under such circumstances, is obtained 'without due process

of law,' within the meaning of the Fourteenth Amendment to the Federal Constitution, and such a judgment is in violation of Article VI., Section 11, of the State Constitution, which says: 'No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior Court, except by consent of all the parties.'

"It is insisted that the effect of these statutes is to create a Court and invest the Trustee with judicial powers. They clothe him with authority to hear and determine causes, and give to his conclusion all the force and effect of a judgment, upon which a distress warrant, the most summary of all executions, may issue. While the Trustee, exercising the powers conferred by these statutes, may not be, *eo nomine,* a judge, yet he is acting in a *quasi* judicial capacity. He summons witnesses, hears and weighs evidence, and renders a decision upon it, which becomes the basis of an execution. Certainly a person who performs such high and responsible duties as those confided to the Trustee under the assessment Acts of Tennessee, should not have a direct pecuniary interest in the result of his decision. Yet he receives a compensation proportionate to the amount of his judgment."

If this position be tenable and the result as claimed, then it is evident that all our laws in regard to the assessment of property for purposes of taxation, are and have been for a series of years, unconstitutional, for they all give to the Assessor a certain per cent. upon property assessed by him for his services, and his compensation is thus made to depend upon the amount of property assessed and the valuation placed upon it by him. See the last Act of Extra Session 1890, Chapter 30, Section 1. A similar rule prevails in regard to Trustees in assessing picked up taxes.

Whatever may be said of the unwise policy of providing that the Assessors shall receive a compensation regulated by the amount and value of the property assessed by them, it is evident that it has been adopted in our legislation, and must stand, unless it is inhibited by the constitutional provisions. While the Assessor, in the discharge of his duty, exercises a judicial or *quasi* judicial function, still he is not a Judge of a Supreme or Inferior Court in the sense of the constitutional provision, and that provision cannot be held to apply to such offices, because not in the letter of the inhibition. All objections of this character would be remedied by adopting a different mode or rule by which to regulate the compensation, but, inasmuch as the Legislature has sanctioned this mode, and it is not contrary to the provisions of the Constitution, this Court cannot but sustain it. Besides, it does not appear that any

objection was made before the Trustee because of his disqualification on account of interest, and, under our authorities, the objection for want of qualification has been waived. *Holmes* v. *Eason*, 8 Lea, 754; *Posey* v. *Eaton*, 9 Lea, 500.

It is said the Acts under which the assessment was made, are contrary to the provisions of Article XIV., Section 1, of the Federal Constitution, which forbids any State to deny, to any person within its jurisdiction, the equal protection of the law, and it is contended, in a general way, that these Acts discriminate in favor of individuals as against corporations, in that they fix a rate of taxation for the former that is higher and different from that applicable to the latter. No doubt counsel meant to say exactly the reverse of this, to wit: that the rate fixed for corporations was higher than that fixed for individuals, and we so treat it. But the assignment does not point out how, or in what way or sense, the rate is different, nor are we able to see how the rate is made higher, even, though, from the nature of the case, the manner of assessing is necessarily somewhat different. The exception is not specific, as required by Rule 29, 1 Pickle, 757, and does not point out definitely the errors complained of. But, if we hold that this assignment is meant to raise the question of the disqualification of the Assessor to make the assessment, because of interest in him, and that a judgment rendered by him is obtained without "due process of law," within the

meaning of the Fourteenth Amendment to the Federal Constitution, still, in the view we have taken, the assignment in not well made. The manner adopted by the Acts of Tennessee to arrive at the taxable value of the property of a corporation by taking into account its stock and bonded debt, has been approved as legal by the Supreme Court of the United States in the Railroad Tax Cases, 92 U. S., 604, and it is neither arbitrary nor double taxation. Welty on Assessments, pp. 250, 251. See, also, Federal Reporter, Vol. 64, p. 9. All other assignments not specifically treated herein are without merit, and are overruled.

The decree of the Chancellor is affirmed with costs.