### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION.

---

### NASHVILLE. DECEMBER TERM, 1910.

---

BRANSFORD REALTY COMPANY *v.* LYLE ANDREWS, *Comp-
troller, et al.*

### (*Nashville.* December Term, 1910.)

1. **CORPORATIONS.** Evidence of what the officers understood
   from the charter and by-laws to be the place of the domicile
   or chief office is incompetent and immaterial.

   Where the charter of a corporation does not locate the domicile
   of the corporation further than that it shall be in a certain
   county, and the by-laws merely provide that it shall have its
   chief office in the county, and such branch offices as may be
   necessary, evidence that the officer of the corporation under-
   stood by the language of the charter and by-laws that the head
   office was to be in said county, outside of the city, or as dis-
   tinguished from the city, is incompetent and immaterial. (*Post,*
   p. 580.)

2. SAME. Place of domicile or chief office for purpose of taxation of tangible and intangible personalty.

Where the charter and by-laws of a realty corporation do not locate the domicile or chief office thereof further than that it shall be in a certain county, and the evidence shows that once a year a stockholders' meeting was held at the residence of the president in said county, but outside of the city, for the election of directors; that the president gave to the business of the corporation several hours' thought every day at his said residence; that the president negotiated and made many sales at his said residence, which he had the power to do without consulting the directors; that the board of directors uniformly met at an office in the city, fixed as the office of the corporation by all the advertisements and return cards upon its mail matter and letter-heads; that very important business was transacted at this city office; that everything done by the governing agency, the board of directors, was done there; that such office was designated in the minutes as the office of the corporation until the litigation arose; that it was at this office that the governing agencies originated policies, managed and controlled the business of the corporation; that the bulk of the management was had and exercised at such city office, it was held that the location of the domicile or chief office of the corporation is in the city, and not at the president's house outside of the city, for the purpose of the taxation of the corporation's tangible and intangible personalty, and especially of its intangible personalty. (*Post, pp.* 580-583.)

Case cited and approved: Grundy Co. v. Tennessee Coal, etc., Co., 94 Tenn., 295, 309.

3. CHANCERY PLEADING AND PRACTICE. City may file and maintain cross bill for recovery of taxes in a taxpayer's unsuccessful suit to enjoin collection of taxes.

Where a private corporation files a bill against a municipal corporation and its proper officers to enjoin the collection of taxes under a distress warrant, the municipal corporation may file and maintain a cross bill for the recovery of the amount of

the taxes, with interest, and the penalty fixed by ordinance, under the assessment of taxes, where the complainant was legally liable therefor and was not entitled to any injunctive or other relief against the collection thereof. (*Post, pp.* 579, 580, 583.)

### FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

BAILEY & LUSK, for complainant.

A. G. EWING, JR., and WM. HUME, JR., for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The city of Nashville caused to be assessed, for the year 1907, the personal property of the complainant, both tangible and intangible, on the basis of the residence of the corporation within the city of Nashville. The amount of the tax was $1,080. A distress warrant was issued, and the tax was about to be collected, when the original bill was filed for an injunction. The basis of the relief sought was that the Bransford Realty Company had its chief office at the home of its president, Johnson Bransford, outside of the city limits, but within Davidson county, and that therefore the city could only tax such tangible personalty as lay within its bounds, which was of insignificant value; whereas, its intangible assets were quite large, amounting to more than $70,000. The chancellor sustained the complaint, and granted a per-

manent injunction. In the course of the proceedings, the city filed a cross bill to recover the amount above mentioned, but it was denied relief; and from this action of the chancellor, and his action in granting relief upon the original bill, an appeal was prosecuted, and errors have been here assigned.

In the view we take of the case, we need consider only the point above mentioned; that is, the location of the chief office of the corporation.

The charter does not locate the domicile of the corporation, further than it shall be in Davidson county. The by-laws are equally indefinite. They provide that it shall have its chief office in the county, and such branch offices as may be necessary. Evidence was introduced in the trial court to the effect that the officers understood, by the language used in the charter and in the by-laws, that the head office was to be in Davidson county, outside of the city, or as distinguished from the city. Objection was made in the court below to the competency of this evidence, but it was overruled. Error has been assigned here upon this action, and we think correctly. However, if the evidence were competent, it would be really immaterial.

We do not consider, or undertake to decide, what would be the effect of a provision, either in the charter or the by-laws, fixing a particular place as the chief office of the corporation, as regards the effect of such action upon the taxing power of the State, or any of its municipalities, in case it should appear that such office was the chief office only in name, while the real business of the corporation was transacted elsewhere. That ques-

tion does not arise in this case, and need not be considered.

No chief office having been fixed in any other way, we must determine its location from the evidence.

It is insisted in behalf of the complainant, as already indicated, that the chief office is outside of the city limits, at the home of Mr. Bransford. All that is done at Mr. Bransford's home, as it appears from the evidence, is that once a year he, Mr. Lusk, and Mr. Althauser, the secretary, meet with the proxies of the other stockholders, and vote for and elect directors. There were at the beginning some fifteen stockholders, and now there are about ninety; the stock having been increased in recent years very largely. However, when the tax was assessed which is in controversy in the present case, there were, perhaps, only fifteen stockholders. Still what we have stated embraces all that was ever done at the home of Mr. Bransford, with the exception of certain things now to be mentioned.

Mr. Bransford, the president, testified that he himself gives to the business of the corporation from two to five or six hours' thought every day at his home; that he has made at that point something like twenty-five sales, and that he has negotiated perhaps a hundred others. It appears from the by-laws that he has very large powers, and can make sales without consulting the board of directors. The board of directors have uniformly met at the office in the city of Nashville, which is at the Bruce Building, No. 162 North Fourth avenue. The advertisement which the corporation runs in the directory,

appearing on every eighth page of that book, fixes the place just mentioned as the office of the company; likewise their display advertisement in the newspaper indicates the same to the public; also the return card upon their letter-heads. At this place, very important business has been transacted; among other things a large increase made in the capital stock of the corporation, and, indeed, everything that can be done by the governing agency, the board of directors. Up to about January 25, 1907, the office just referred to on North Fourth avenue, was uniformly designated in the minutes as the office of the company, and generally after the 25th of January, 1907, until the bill was filed in the present case, and after that time the office in Nashville was generally referred to in the minutes as the branch office.

We hold, in conformity with the principle laid down in *Grundy County v. Tennessee Coal, etc., Co.,* 94 Tenn., 295, 309, 29 S. W., 116, that the location of the chief office is to be determined, not by the place merely where the mechanical work of the corporation is done, but where its governing agencies originate policies, and manage and control the business of the company. We think the facts above indicated clearly show that the bulk of the management is had and exercised at the city office. We do not undervalue the services of Mr. Bransford to the company. We feel sure that the plans which he has devised from time to time have been of much benefit to the business of the company; nor do we undervalue the fact that he made a few of the very many sales which this large company has conducted, and that he negotiated

quite a number himself.  However, although all of this is true, it must not be forgotten that he had an excellent board of directors, and that through the deliberations of this body necessarily the largest part of the planning and devising and management was done.

On the whole case, we think it clear that the chief office of the company was at the Bruce  Building,  No.  162 North Fourth avenue, when the assessment was made in the present case, and that it was properly made.

It results that the decree of the chancellor must be reversed, and that a decree must be entered in favor of the cross complainant, the city of Nashville, for the amount of taxes claimed, together with interest, and also a six per cent. penalty, as provided by the charter of the city of Nashville.