STATE *ex rel.* KNOX COUNTY *et al. v.* ADAIR *et al.*

(*Knoxville*, September Term, 1944)

Opinion filed December 2, 1944.

JAMES G. JOHNSON, of Knoxville, for Knox County, complainant-appellee.

WAYNE PARKEY, of Knoxville, for City of Knoxville, complainant-appellee.

CLYDE W. KEY, of Knoxville, for Richard D. Reeder and Claude S. Reeder, defendants-appellant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The cause now before us, on appeal from the Chancery Court of Knox County, involves the alleged error of the Chancellor in disapproving the action of the "Board for the Settlement of Liens on Insolvent Property." A construction of Chapter 126 of the Public Acts of 1939 is necessary to determine the scope of the supervisory power of a Chancellor over tax settlements made by the Board. Before we pass to a consideration of the assignments of error it is necessary that we state (1) the substance of the Act above mentioned, (2) the nature of the settlement which the property owners sought to have approved, and (3) the Chancellor's decision.

The aforesaid Act provides (Section 3) for a "Board for the Settlement of Liens on Insolvent Property," said Board to consist of the County Trustee of the county where the insolvent property is located, and the Director of Finance of the municipality where the property is located. It further provides:

"Section 4. Be it further enacted, That any person owning property, which he considers to be insolvent property, may apply to either member of the Board for a settlement of the tax liens, special assessment and improvement district liens, and other similar liens on his property. If the Board is of the opinion that the property in question is actually insolvent property, the Board shall notify the property owner of the amount of money the Board will accept in full settlement of the liens heretofore mentioned, which amount of money shall not be less than the amount for which the Board is of the opinion the property could be sold to a private purchaser at a tax sale. In the absence of fraud, the decision of the Board as to the value at which the property could be sold at a tax sale shall be conclusive."

"Section 5. Be it further enacted, That any property owner desiring to take advantage of the decision of the Board shall deposit with the County Trustee the amount of money that is acceptable to the Board. The Board shall then make a written report, signed by both members of the Board, which report shall state the name of the property owner, a brief description of the property, the description to be the same as or similar to the description under which the property is assessed, the amount of the existing liens, and the amount for which the liens are being settled. The liens sought to be settled shall not be deemed to be satisfied until this written report shall be presented to the legislative body of the municipality in-

volved and spread upon the minutes of such body, and until the taxes shall be marked as settled on the tax books of the municipality and county involved, upon the performance of which conditions the liens shall be discharged. It shall not be necessary for the legislative body of the municipality to take any action on the report of the Board other than spreading the same on the minutes of the legislative body. Only those liens securing obligations that are due and delinquent at the time the decision of the Board is made shall be removed in the manner herein provided. In all settlements involving liens on which suits have been filed, it shall be necessary that the said settlements shall be approved by the Court in which said suits are pending before said settlements are final.''

It appears from the record now before us that a number of suits had been filed in the Chancery Court for the purpose of collecting delinquent taxes for the years 1931 to 1943, both inclusive. On December 14, 1943, the Trustee of Knox County filed an intervening petition in the foregoing consolidated tax cases in which it was alleged that a certain tract of real estate situated on State Street in Knoxville, formerly owned by Col. Claude Reeder and now owned by his son, Richard D. Reeder, was encumbered with delinquent state, county, and city taxes in the amount of $40,000; that in September, 1943, the owners of the property made application for relief under the provisions of Chapter 126 of the Public Acts of 1939; that upon consideration of the application the Board agreed to accept $10,000 in full settlement of said delinquent tax liens, and that this amount had been paid to the Trustee of Knox County and was still in his possession.

The petition further averred that the said Trustee was a brother and uncle, respectively, of the owners of the property and had not participated in effecting the settlement. The settlement, which was in fact signed by the petitioner Lum Reeder and the Director of Finance of Knoxville, was presented to the Court with the request that the Court advise the Trustee as to what disposition should be made of the money and that the Court entered such order as might seem proper. When this petition was presented to the Chancellor he entered an order setting the cause for hearing upon oral testimony on two questions: (1) Whether the provisions of Chapter 126 of the Acts of 1939 had been complied with, and (2) the amount for which the property could be sold to a private purchaser at a tax sale.

The Chancellor, after hearing the testimony of witnesses as to real estate values and what this property could be sold for to a private purchaser at a tax sale, dismissed the petition. No question is made here but that the property owners complied with the statute. The decree of the Court recites: "That for the reasons assigned in the oral opinion of the Court, the Court hereby declines to approve the settlement. Thereupon the property owners moved the Court to find from the evidence for what amount the said property could be sold to a private purchaser at a tax sale. In response to said motion the Court finds said amount to be $15,000.00." The decree further shows that the property owners offered to pay this amount and asked the Court to approve it. This the Court declined to do and overruled the motion "upon the sole ground that the Court was of the opinion that it did not have jurisdiction to approve the settlement for any amount other than that fixed by the Board," etc. In the oral opinion, which is made a part of the record,

the Court expressed the view (1) that had the property owner not defaulted in the payment of taxes, his property would not have become insolvent; (2) that the statute does not apply to property that is capable of producing an income; and (3) that the amount offered is inadequate.

An appeal was taken from the decree of the Chancellor and the following assignments of error are made by counsel for the property owners: (1) There is no evidence to sustain the decree of the Court in disapproving the settlement in question; (2) the Court is without jurisdiction, in the absence of fraud, to review the determination of the ''Board for the Settlement of Tax Liens on Insolvent Property'' as to the tax sale value of the property in question, the determination of said Board as to said value being made final by Chapter 126 of the Public Acts of 1939; (3) the Court erred in holding that Chapter 126 of the Acts of 1939 has no application to commercial or income-producing property. The Court should have held that the Act is applicable to all ''insolvent property'' as therein defined, regardless of its character or use.

█ The contention here made by counsel for the City of Knoxville and Knox County, that the settlement sought to be approved was a fraud because the same was signed and approved by Lum Reeder, Jr., Trustee, who was a brother and uncle of the property owners, cannot be sustained. There was no effort made in the court below to impeach the settlement on the ground of fraud. Moreover, we find nothing in the decree of the Chancellor or in his oral opinion that even suggests there was any fraud in effecting this settlement. The record shows that when the cause was heard on oral testimony the Chancellor announced, since it was a matter of public interest, he would hear any tax payer who desired to give evi-

dence upon the issues involved. No witness appeared or was tendered who testified as to any fact or circumstance indicating that there was any fraud practiced by anyone involved in the transaction.

Passing now to the assignments of error, we think the learned Chancellor was in error in holding that if the property owner had not defaulted in the payment of taxes his property would not have become insolvent, and hence, because of his own wrong, he is not entitled to relief in a court of equity.

We think the Chancellor was in error in not approving the settlement for $10,000. The mere fact that the Trustee was related to the property owners did not in and of itself disqualify him from signing and approving the settlement. It is only fair to say that the Trustee took no active part in fixing the amount of this compromise agreement. The Director of Finance of Knox County fixed the valuation and the Tax Assessor signed and approved it. In thus acting in his official capacity as a member of the Board, the Trustee was no more disqualified than a Tax Assessor who assesses property for taxation that is owned by his own blood relatives. This constantly occurs in every county and city in the state.

In one of our earliest cases the question arose as to the disqualification of Judge HAYWOOD, in a case then pending before the Court, upon the ground that he was related to one of the litigants. The Court held: ''As the law stood before the formation of the constitution, no degree of nearness excluded a judge.'' *Waterhouse* v. *Martin*, 7 Tenn. (Peck) 374, 379. It thus appears that in the absence of a constitutional provision, or a statute, a judge is not disqualified from acting in any case by reason of relationship and his decree is not open to collateral attack. 33 C. J., p. 1005. Now if the judgments and decrees

of judges are not subject to collateral attack on account of relationship, the same rule should more strongly apply to persons who act in an administrative or quasi-judicial capacity. In *Grundy County* v. *Tennessee Coal, etc., Co.*, 94 Tenn., 295, 325, 29 S. W. 116, contention was made that the Trustee, having authority under the statute to hear and determine causes and issue distress warrants for taxes due, was disqualified because of interest, and that he acted in violation of Article VI, section 11, of the State Constitution, which provides in substance that Judges of the Supreme and inferior courts shall not preside in any cause in which they may be interested except by consent of the parties. The Court held that this provision of the Constitution had no application to Trustees or Assessors. In *Tennessee Fertilizer Co.* v. *McFall*, 128 Tenn. 645, 163 S. W. 806, 808, the question again was presented in which it was insisted by the taxpayer that "the trustee is an interested party, and taxpayers are deprived of due process of law in being forced to trial before him under such circumstances." This contention was again overruled, the Court citing *Grundy County* v. *Tennessee Coal, etc., Co., supra*, and *Hibben* v. *Smith*, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195.

 Since there is no statute disqualifying the Trustee from acting in cases such as we have before us, and the constitutional provision herein referred to having no application, we are constrained to hold that the Trustee of Knox County was not disqualified from signing and approving the settlement as provided in Chapter 126, Acts of 1939. The property owners having fully complied with the statute, it results that the settlement is not subject to judicial review. The purpose of the petition filed by the Trustee was to have the Chancellor advise him as to the validity of the settlement and to direct what

disposition should be made of the money deposited with him by the property owner. We think the Chancellor should have held that the Trustee was qualified to act and that the settlement was conclusive upon all parties in interest.

The statute makes no provision for a review by the courts of such settlements. In the absence of fraud the decision of the Board as to value, etc., is conclusive. Under the statutory set-up for the settlement of delinquent taxes the Board is clothed with full authority to hear proof as to the value of the property. In so doing it looks to every element of value, whether it is commercial or income-producing property or otherwise. Upon reaching a decision "the Board shall notify the property owner of the amount of money the Board will accept in full settlement of the liens," etc. Under Section 4 of the Act, if the owner agrees to pay and does pay this amount, the settlement is final. This Court has held in many decisions that it will not review assessments for taxes upon property except to determine whether said assessments are legal or illegal. It was so held in *Savage Co.* v. *City of Knoxville*, 167 Tenn. 642, 72 S. W. (2d) 1057, and other cases therein cited.

In that case the property owner sought a review of the amount of the assessment by the Board of Equalization. Speaking to this question it was said (167 Tenn. at page 644, 72 S. W. (2d) at page 1058):

"Nothing is better settled in this jurisdiction, and everywhere we believe, than that the courts will not undertake such a review, nothing else appearing. As said in the cases, value is a matter of opinion, and the opinion of the courts is not likely to be any better than the opinion of tribunals specially created to fix property values. It is competent for the Legislature to provide

that the findings of such tribunals shall be final so long as they act within their jurisdiction, observe statutory requirements, and there is no fraud.''

We think the foregoing is clearly applicable to the instant case. The Legislature created the Board for the Settlement of Tax Liens, authorized it to fix the value of the property involved, and expressly provided that its decision should be conclusive. If the Court is without authority to review the assessed value of property made by duly authorized officials, it is without authority to review a settlement of delinquent taxes under this statute when the Act plainly provides that its decision shall be conclusive.

The complainant having filed an intervening petition in a number of consolidated causes brought for the collection of delinquent taxes, this cause is properly before the Court as a tax suit pending, and we hold that the Chancellor should have approved the settlement in question.

The decree of the Chancellor will be reversed and the cause remanded for a proper allocation of the $10,000 to the State, City of Knoxville, and Knox County.

GREEN, C. J., CHAMBLISS, J., and WEBB, S. J., concur.