## FRANCE *v.* THE STATE.

1. CRIMINAL LAW. *Pleading and Practice. Lottery tickets. Sufficient description, etc.* An indictment for the sale of lottery tickets which merely uses the language employed by the act in creating and defining the offense is good, though it fails to set out the ticket, and aver where the lottery was to be drawn, or its name and purpose. The word "lottery" implies a game of hazard.

   Case cited: Meigs' R., 421.

   Code cited: Sec. 4890.

2. SAME. *Verdict sufficiently certain. When.* Where the prisoner was indicted for selling lottery tickets in five cases, all being identical except in the day of sale, a general *verdict of guilty in four cases* will be sufficiently certain to predicate a judgment upon, they all being tried together.

France *v.* The State.

3. SAME. *Fine of over* $50. Where the fine of $500 for the sale of lottery tickets has been peremptorily fixed by the Legislature, such act is not unconstitutional, and a fine, therefore, of more than $50, *though it be not assessed by the jury,* will lie.

## FROM SHELBY.

Appeal from the Criminal Court. JNO. FLIPPIN, Judge.

L. B. HORRIGAN for plaintiff.

ATTORNEY-GENERAL HEISKELL for State.

BURTON, Sp. J., delivered the opinion of the court.

The defendant below was indicted in the Criminal Court of Shelby county in five several cases for selling a lottery ticket. He was convicted in four cases, and acquitted in the fifth. The court pronounced sentence upon him, and he has appealed in error to this court.

Various errors in the proceedings below are assigned by him, and insisted upon in an elaborate argument by his counsel, which we will proceed to notice.

1st. It is said in the first place that the court erred in refusing to quash the several indictments because they are defective in describing the alleged offense. The supposed defects are:

1. That they do not set out the lottery ticket, nor aver any reason for the omission.

2. That they fail to aver where the lottery was to be drawn.

3.  That they do not aver the name of the lottery, or the purposes for which the lottery was set on foot or made.

The force of these objections, and of other objections taken to the proceedings in the court below, will be seen by collating the description of the offense as contained in the several indictments with the statute against selling lottery tickets.

The five several indictments are identical, except that the days on which the several offenses are alleged to have been committed are varied.  We copy the material allegations of the first indictment, found in the transcript of the record, which avers "that J. E. France, laborer, late of the county aforesaid, on the 20th day of December, A. D. 1871, in the county aforesaid, did unlawfully then and there sell to one Mike Garvin a lottery ticket, a more particular description of which is to the grand jurors unknown," etc.

Sec. 4890 of the Code is in the words following: "If any person vend, or attempt to vend, directly or indirectly, any lottery ticket in this State in any scheme to be drawn in this or any other State or county, he is guilty of a misdemeanor, and, on conviction, shall be fined $500, and imprisoned one month in the county jail."

It may further be remarked, that this legislation is in pursuance of sec. 5, art. 11 of the Constitution of Tennessee, which provided that the Legislature shall have no power to authorize lotteries for any purpose, and shall pass laws to prohibit the sale of lottery tickets in this State.

France *v.* The State.

It may further be remarked that the Constitution of 1834 contained the same provision, and was held to be itself a prohibition of lotteries: Meigs' R., 421.

It will be seen from the foregoing provisions that the people of Tennessee have thought this species of gaming an evil of sufficient magnitude as to positively inhibit it by the fundamental law. And it is further seen that the Legislature has carried out the Constitutional provision by an enactment broad enough in its terms to cover any possible infraction of the fundamental law.

In the case of *The People* v. *Taylor*, Bronson, Chief Justice, said: In a state where there was no authorized lottery, an indictment was adjudged sufficient on demurrer which merely alleged that the defendant sold a quarter part of a ticket in a certain lottery without giving any description whatever either of the ticket or the lottery: *The State* v. *Follet*, 6 N. H., 53.

The Court went upon the ground that as there could be no ticket in any lottery which would not be within the prohibition of the statute, it would be mere surplusage to describe in the indictment either the ticket or the lottery. We have not had access to the case of *The State* v. *Follet* above referred to, but the reasoning of it, as given above, is entirely satisfactory to us, and, we think, precisely applicable to our legislation upon the subject. The case from which we have already quoted cites with approbation *Commonwealth* v. *Hooper*, 5 Pick., 42, where it was held that in an information for advertising it was not necessary to allege by name, nor was it necessary on the trial

31—VOL. 6.

France v. The State.

to prove what kind of lottery tickets the defendant advertised. *Freleigh* v. *The State*, 8 Missouri, 606, is also referred to, in which it was held to be enough in an indictment for selling to say "a certain lottery ticket," without giving either its tenor or purport.

It is certainly true, however, that in some of the cases to which we have been referred, more particularly in describing the offense is required than is found in this indictment. But this, we think, will be found to result from the difference in the legislation of the several States upon the subject. We are cited, for instance, by the defendant to the case of *The People* v. *Payne*, 3 Denio, 88, in which it is held that an indictment for the sale of lottery tickets must set forth the lottery as one set on foot for the purpose of disposing of property, and when we turn to the statute upon the subject, we find that the purpose of setting to sale, or disposing of property, is a part of the statutory description of the offense in that State. In the State of Tennessee, on the contrary, the sale of a ticket in any scheme to be drawn in this or any other State or county is unlawful. And it is no part of the definition of the offense in our statute that it should be set on foot for the purpose of disposing of property. All the decisions, as we think, are grounded upon the rule that in describing an offense created by statute it is sufficient if the indictment uses the words employed by the Legislature in creating and defining the offense.

This is done in the indictment we are considering, and although the language of the statute in defining

this offense is very general, we think that the indictment is sufficiently certain to inform the prisoner of the nature of the offense, and identify the criminal transaction imputed to him.

This is the main reason for the requirement of certainty in pleading, and inasmuch as the person to whom and the time when the tickets were sold is specified, the defendant is in no danger of ever being called upon to answer a second time for the offenses charged in these indictments. When a formal trial is pleaded in bar, it is enough to show by the record that the pleadings were such in the first case that the same matter might have come directly in question on the trial, and then to show by extrinsic evidence that it did, in fact, so come in question on that trial.

In further answer to the argument so much insisted upon, that the indictments do not show that there was any scheme by which prizes of value were to be distributed, we remark that the very definition of a lottery is that it is a game of hazard in which small sums are ventured for the chance of obtaining a larger value either in money or other articles. To charge, therefore, that a defendant sold a lottery ticket necessarily implies that he sold a chance for a prize of value, and if this were not true the defendant could defeat the prosecution by proving, under the plea of not guilty, that no prizes were to be distributed, for in such case there would be no game of hazard.

The foregoing authorities and considerations, as we think, dispose of the objections taken to the indictments, both on the motion to quash and by the plea

in abatement.    It is said that the averment that a
more particular description of the tickets is to the
grand jurors unknown is a traversible averment, and
1 Bishop's Criminal Procedure, 3300, is cited as au-
thority.    We have not been furnished with the book;
but, as already seen, we hold under our statute, at
least, that. these circumstances of description are im-
material, and, therefore, by an elementary principle of
pleading, being immaterial, they are, therefore, not tra-
versible.    We hold, therefore, that there was no error
in the court below, either in refusing to quash the
indictments or in sustaining the demurrer to defendant's
plea in abatement.

2d.    The next objection taken is that the verdict
of the jury, which found the defendant guilty in four
cases and not guilty in the other case, is too uncer-
tain to predicate a judgment upon.    This objection,
coming from the defendant, has little to recommend
it when it is disclosed by the bill of exceptions that
it was "agreed by and between the Attorney General
and the said defendant that all of the indictments
against the said defendant for selling lottery tickets
might be tried at the same time by the same jury,
thereupon the jury was duly sworn to render a verdict
in each and all of the cases, that is to say, five in-
dictments for selling lottery tickets."

The witness for the State proved that he purchased
tickets from the place of business of the defendant
four times that he was certain of, and perhaps five or
six times.    The jury gave him the benefit of the
doubt, and convicted him in four cases only.    Now,

when it is remembered that the same identical offense is charged in each of the five cases, it is certain that it is wholly immaterial upon which four he was convicted, nor do we well see how the jury, in their verdict, could have discriminated the cases. And when it is further seen that the uncertainty, if any existed in the verdict, was brought about by the defendant's agreement that all the five cases should be tried together, we do not think his objection should be listened to. To allow it to prevail would be to sanction mere trifling with the court.

3d. The remaining error insisted on is that the court in these cases violated a constitutional provision in imposing a fine of more than $50, when the same had not been assessed by the jury. Sec 14, art. 6 of the Constitution is, that "no fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact if they think the fine shall be more than fifty dollars." The substance of this constitutional provision is enacted in sec. 5237 of the Code.

The above provisions are manifestly an amplification of the provision contained in sec. 16, art. 1, against the imposition of excessive fines.

The English bill of rights particularly declared that excessive fines ought not to be imposed which had a retrospect, according to Sir Wm. Blackstone, to some unprecedented proceedings in the Court of Kings' Bench, in the reign of King James II. The history of this important provision renders it plain that it was

aimed at the abuse of the unlimited power of courts. in respect to fines, and was not intended as a limitation upon the power of legislation. It is very plain,. too, as we think, that the provision in our own Constitution that a fine exceeding fifty dollars cannot be imposed unless assessed by a jury refers to cases where the court has a discretion in fixing the amount of the fine. It can have no application to the case in hand, where the Legislature has peremptorily fixed the fine at five hundred dollars in every case.

This court has repeatedly exercised the jurisdiction to declare an act of the Legislature unconstitutional, but have also recognized the rule that deference to a co-ordinate branch of the government demanded that an act of the Legislature should not be declared unconstitutional unless it was a plain and palpable violation of the fundamental law.

Such is not this case, as we think. We think that it was entirely regular for the jury simply to say guilty or not guilty by their verdict in these cases. Neither the court or the jury had anything to do in assessing the fine. The law fixed that as a consequence of the verdict, and there was nothing for the court to do but to give judgment in accordance with the law.

The judgment of the court below is affirmed, and the causes remanded to carry out its sentence.

France *v.* The State.

TURNEY, J., dissented, as follows:

I cannot agree to the opinion of the majority of the court in its construction of sec. 14, art. 6 of the Constitution.

I understand the language of that article to confer upon juries the exclusive power of assessing fines exceeding fifty dollars.

It is plain and unambigious the word "laid," as employed, means imposed as a burden, suffering, or punishment, and the sentence should, in my opinion, be construed to mean, no fine or pecuniary punishment shall be imposed on any citizen of this State that shall exceed fifty dollars unless it shall be assessed by a jury, etc.

Under the statute before us the Legislature has taken from the jury, as well as the court, all discretion, and fixed a fine alike. to all cases of the class defined, without regard to circumstances of mitigation or excuse. It has "laid" the fine, and the court is a mere mechanical instrument for the execution of its judgment if the majority opinion is correct.

The power of a Legislature is confined to creating or defining offenses punishable by fine; the execution of the laws thus made is for the courts and juries. The attempt on the part of a Legislature to do more is both an assumption of power not delegated, but by the clause of the Constitution in question expressly forbidden, and also an attempt to delegate that assumed power, as it must be that the court that proposes to follow the statute must pronounce judgment for the

fine, order the defendant into custody until it is secured, and by the same judgment order execution to issue for its collection. Such judgment is absolutely necessary to the execution of the law, until it has "laid" or imposed the fine it cannot be collected, and is, in fact, no punishment assessed against the particular citizen.

The makers of the Constitution recognized the fact that no power in the land could enforce the law against crime except the courts, hence we find this ordinance under the head "judicial department."