IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 1, 2008, Session

# FRANK BARRETT D/B/A BARRETT CONSTRUCTION COMPANY v. TENNESSEE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 05-739-I    Claudia Bonnyman, Chancellor**

---

**No. M2006-02338-SC-R11-CV - Filed May 5, 2009**

---

This case presents a constitutional question of first impression: whether monetary penalties assessed by an administrative agency are subject to the fifty-dollar limitation of article VI, section 14 of the Constitution of the State of Tennessee. For the reasons discussed below, we hold that article VI, section 14 applies only to the judicial branch of government and therefore is inapplicable to monetary penalties assessed by an administrative agency, which is part of the executive branch. We therefore affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., and E. RILEY ANDERSON, SP.J., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, Frank Barrett d/b/a Barrett Construction Company.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Warren A. Jasper, Assistant Attorney General, for the appellee, Tennessee Occupational Safety and Health Review Commission.

## OPINION

### Facts and Procedural History

The General Assembly adopted the Tennessee Occupational Safety and Health Act ("TOSHA") for the purpose of preventing injuries and illnesses arising out of work situations. Tenn. Code Ann. § 50-3-102 (2008). To fulfill this purpose, TOSHA directs the Commissioner of the Department of Labor and Workforce Development ("Department") to promulgate regulations,

conduct inspections, issue citations, and assess monetary penalties. Tenn. Code Ann. §§ 50-3-201, -301, -307, -402.

The appellant, Frank Barrett, is the sole owner of Barrett Construction Company in Nolensville, Tennessee. On October 5, 2000, Mr. Barrett's employees were installing new shingles on a church roof in Winchester, Tennessee, when David Thomas, a safety supervisor employed by the Department, inspected the work site. Mr. Thomas observed four "serious" violations and one "non-serious" violation.

Mr. Thomas issued citations to Mr. Barrett and assessed the following monetary penalties pursuant to TOSHA: $350 for the serious violation of an employee working on a steep roof without the use of a protective guardrail system, safety net, or personal fall arrest system; $300 for the combined serious violations of the use of a vertical lifeline that did not have a minimum breaking strength of 5,000 pounds and the use of vertical lifelines that were not protected against abrasions or cuts; and $300 for the serious violation of using a portable metal extension ladder with a broken rung. Mr. Thomas did not assess a monetary penalty for the non-serious violation of an employee descending a ladder while facing away from the ladder.

Mr. Barrett requested a hearing before the TOSHA Review Commission, a three-member commission created by the General Assembly to review the citations issued and monetary penalties assessed by the Department. See Tenn. Code Ann. § 50-3-802(a). The Review Commission conducted a hearing on January 20, 2005. Mr. Barrett conceded that the violations occurred and that the total amount of $950 was within the range of monetary penalties authorized by TOSHA. See Tenn. Code Ann. §§ 50-3-403, 405(a). He asserted, however, that the monetary penalties violated article VI, section 14 of the Tennessee Constitution, which prohibits the imposition of a fine exceeding fifty dollars unless the fine is assessed by a jury.

The Review Commission sustained the citations and monetary penalties. Mr. Barrett appealed to the Chancery Court for Davidson County pursuant to the Uniform Administrative Procedures Act ("UAPA"). See Tenn. Code Ann. § 50-3-806. He raised the sole issue of whether the monetary penalties in the amount of $950 violated article VI, section 14. The chancery court affirmed the Review Commission's decision in a written order entered on August 31, 2006.

Mr. Barrett filed a timely notice of appeal. The Court of Appeals affirmed, holding that article VI, section 14 does not apply to monetary penalties imposed by an administrative agency.

We granted Mr. Barrett's application for permission to appeal.

**Analysis**

This case presents an issue of first impression: whether article VI, section 14 of the Constitution of the State of Tennessee applies to monetary penalties assessed by an administrative agency. The Review Commission argues that the clause applies only to the judicial branch of government and therefore is inapplicable to monetary penalties assessed by an administrative agency, which is part of the executive branch. For the reasons discussed below, we agree.

On review, this Court has the authority to determine whether the decision of an administrative agency violates our state constitution. Tenn. Code Ann. § 4-5-322(h)(1) (2005). "Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008).

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." (emphasis added). In discussing the origin and purpose of the Excessive Fines Clause, the United States Supreme Court has explained that

> the Eighth Amendment was "based directly on Art. I, § 9, of the Virginia Declaration of Rights," which "adopted verbatim the language of the English Bill of Rights." . . . "The English version, adopted after the accession of William and Mary, was intended to curb the excesses of English judges under the reign of James II." During the reigns of the Stuarts the King's judges had imposed heavy fines on the King's enemies . . . . In the 1680's [sic] the use of fines "became even more excessive and partisan," and some opponents of the King were forced to remain in prison because they could not pay the huge monetary penalties that had been assessed. The group which drew up the 1689 Bill of Rights had firsthand experience; several had been subjected to heavy fines by the King's bench.
>
> The Framers of our Bill of Rights were aware and took account of the abuses that led to the 1689 Bill of Rights.

Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 266-67 (1989) (footnotes omitted) (citations omitted); see also Calvin R. Massey, The Excessive Fines Clause and Punitive Damages: Some Lessons from History, 40 Vand. L. Rev. 1233, 1263 (1987) (noting that "the political turmoil of the entire seventeenth century resulted in a wrenching exaggeration of the unfettered power of judges to impose financial penalties").

The framers of the Tennessee Constitution placed an identical prohibition against excessive fines in the Declaration of Rights. See Tenn. Const. art. I, § 16. Unlike the federal constitution, however, our state constitution includes an additional clause concerning fines in article VI, the

judicial article. Article VI, section 14 of the Tennessee Constitution, known as the "fifty-dollar fine clause," provides that

> [n]o fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars.

The fifty-dollar fine clause is substantially the same today as it was when adopted as part of our state's first constitution in 1796.[1] See City of Chattanooga v. Davis, 54 S.W.3d 248, 257-58 (Tenn. 2001). "[N]o other provision like it may be found either in the Federal Constitution or in any other modern state constitution. . . . Similar clauses did not appear in any colonial charter, in any early state constitution, including the 1776 North Carolina Constitution, or in the Constitution of the State of Franklin." Id. at 257 (footnote omitted).

"The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent and purpose of those who adopted it." Hatcher v. Bell, 521 S.W.2d 799, 803 (Tenn. 1974). We construe constitutional provisions as written without reading ambiguities into the provisions. State ex rel. Sonnenburg v. Gaia, 717 S.W.2d 883, 885 (Tenn. 1986). We give the terms contained in constitutional provisions their ordinary and inherent meaning. Gaskin v. Collins, 661 S.W.2d 865, 867 (Tenn. 1983). Furthermore, because constitutions are adopted as a whole "it is a proper rule of construction that the whole [instrument] is to be examined with a view to arriving at the true intent of each part." Prescott v. Duncan, 148 S.W. 229, 234 (Tenn. 1912); see also State v. Martin, 940 S.W.2d 567, 570 (Tenn. 1997) (stating that "provisions of the constitution are to be given effect according to the drafters' intention in light of the entire document").

Our review of the Tennessee Constitution in its entirety convinces us that the purpose of the fifty-dollar fine clause was to further limit the power of the judiciary in light of the excesses that occurred in seventeenth-century England. The drafters accomplished this additional limitation by placing the fifty-dollar fine clause in the judicial article, thereby exceeding the prohibition contained in the Declaration of Rights. The framers' intent to curb the power of the judicial branch is further evinced by their adoption of article VI, section 9. Section 9 provides that "[j]udges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." This provision put an end to a common practice in Great Britain known as "summing up," in which judges explained to the jury what the judge believed had been proven. Ivey v. Hodges, 23 Tenn. 154 (Tenn. 1843); see also Hooper v. State, 325 S.W.2d 561, 563-64 (Tenn. 1959) (explaining that article VI, section 9 prohibits trial judges who are charging juries from "assum[ing] any fact as established, however clear it may appear from the evidence").

---

[1] The fifty-dollar fine clause was adopted in the Constitution of 1796 as article V, section 11. At that time, article V was the judicial article. To eliminate confusion, we will refer to constitutional provisions as enumerated in our current constitution throughout this opinion.

France v. State, 65 Tenn. 478 (Tenn. 1873), which was our first opportunity to consider the fifty-dollar fine clause, reflects this construction. In France, we considered a fine of $500 that had been fixed by statute and over which the presiding judge had no discretion. The issue before the Court was whether the imposition of a fine exceeding fifty dollars that had been peremptorily set by the legislature violated article VI, section 14. We observed that the fifty-dollar fine clause is an "amplification" of the excessive fines clause of the Tennessee Constitution and that the excessive fines clause was "aimed at the abuse of the unlimited power of courts in respect to fines, and was not intended as a limitation upon the power of legislation." Id. at 485-86. We distinguished between legislative and judicial action and concluded that article VI, section 14 "refers to cases where the court has a discretion in fixing the amount of the fine. It can have no application . . . where the Legislature has peremptorily fixed the fine." Id. at 486.

Since our decision in France, this Court's article VI, section 14 jurisprudence consistently has affirmed that the clause is intended to limit only the power of the judiciary. See, e.g, Martin, 940 S.W.2d at 570 ("The prohibition against a trial judge fixing fines exceeding $50 was intended to protect citizens from 'excessive' fines fixed by a powerful judiciary."); State v. Bryant, 805 S.W.2d 762, 763 (Tenn. 1991) ("Distrust of a powerful judiciary was said to have been the reason for . . . the constitutional provision."); Upchurch v. State, 281 S.W. 462, 464 (Tenn. 1925) ("The object of the limitation . . . was to prevent judges from imposing unreasonable fines . . . ."); Poindexter v. State, 193 S.W. 126, 128 (Tenn. 1917) ("Were it not for section 14 of article 6 of the Constitution, an impecunious defendant upon whom a large fine had been imposed might be imprisoned for years at the will of the judge alone who tried him.").

Our conclusion that the fifty-dollar fine clause applies only to the judicial branch of government also is consistent with the rule announced in City of Chattanooga v. Davis, 54 S.W.3d 248 (Tenn. 2001).[2] The two cases consolidated in Davis presented the issue of whether the fifty-dollar fine clause was applicable to proceedings for the violation of a municipal ordinance. We held that the clause applies to a monetary penalty for the violation of a municipal ordinance when either the intended purpose or the actual purpose or effect of the monetary penalty is punitive. Id. at 281; see also Town of Nolensville v. King, 151 S.W.3d 427, 434 (Tenn. 2004) (holding that the fifty-dollar fine clause applies to fines imposed by a municipal court judge irrespective of whether the appellant has a right to pursue a de novo appeal and obtain a jury trial in a higher court). Although this rule focuses on the distinction between punitive and remedial monetary penalties, the penalties in Davis were imposed by the Chattanooga City Court and the Davidson County General Sessions Court respectively. Id. at 255-56. These courts are part of the judicial branch of government.[3]

_____

[2] The two appeals consolidated in Davis were City of Chattanooga v. Davis and Barrett v. Metropolitan Government of Nashville & Davidson County.

[3] Article VI, section 1 of the Tennessee Constitution provides, in part: "The judicial power of the State shall be vested in one Supreme Court and in such Circuit, Chancery, and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." See also Tenn. Code Ann. §§ 16-15-101 (providing for general sessions courts), -17-101 (providing for city courts), -18-101 (providing for
(continued...)

Unlike the courts assessing monetary penalties in <u>Davis</u>, administrative agencies are part of the executive branch of government. In <u>Plasti-Line v. Tennessee Human Rights Commission</u>, 746 S.W.2d 691, 692 (Tenn. 1988), we addressed the issue of whether an administrative agency, the Tennessee Human Rights Commission ("THRC"), was "a judicial body, or court, within the executive branch of state government" in violation of the principle of separation of powers. <u>Id.</u> at 692. We determined that the THRC is not a court, "even though [it] may possess judicial characteristics as well as those which are legislative or executive." <u>Id.</u> at 694. We also held that administrative judges and personnel are not subject to the constitutional provisions [in article VI] pertaining to the election of state judges. <u>Id.</u>; <u>see</u> <u>State v. Tenn. Coal, Iron & R.R. Co.</u>, 29 S.W. 116, 123 (Tenn. 1895) ("While [an administrative official] . . . exercises a judicial or *quasi*-judicial function, still he is not a judge of a supreme or inferior court in the sense of the constitutional provision . . . ." (emphasis added)).

More recently, in <u>Richardson v. Tennessee Board of Dentistry</u>, we discussed the scope of an administrative agency's authority to resolve constitutional issues. 913 S.W.2d 446, 454 (Tenn. 1995). We held that the doctrine of separation of powers prohibits the General Assembly from vesting an agency with the authority to determine the facial constitutionality of a statute empowering the agency to act because that authority "rests with the judiciary." <u>Id.</u> at 454-55. We stated that "[a]n administrative agency is a creation of the legislature. While it may have judicial characteristics and may be required to perform quasi-judicial functions, an agency is not part of the judicial branch of government." <u>Id.</u> at 454.

Finally, the fifty-dollar limitation of article VI, section 14 does not apply to monetary penalties assessed by administrative agencies even though agency decisions are subject to judicial review. <u>Cf.</u> <u>Bryant</u>, 805 S.W.2d at 767 ("Allowing appellate review [under the Criminal Sentencing Reform Act] of fines imposed by a jury seems to us a procedural protection consistent with that envisioned by the original framers of the Constitution."). Under the UAPA, the reviewing court does not assess the penalty; it merely reviews its appropriateness. <u>See</u> Tenn. Code Ann. § 4-5-322(h); <u>City of Memphis v. Civil Serv. Comm'n of City of Memphis</u>, 216 S.W.3d 311, 316-17 (Tenn. 2007) (discussing the limited nature of judicial review under the UAPA); <u>cf.</u> <u>Woodard v. United States</u>, 725 F.2d 1072, 1077 (6th Cir. 1984) ("Determination of a sanction to be applied by an administrative agency, if within bounds of its lawful authority, is subject to very limited judicial review.").

We conclude that article VI, section 14 of the Tennessee Constitution, the fifty-dollar fine clause, applies only to the judicial branch of government. The fifty-dollar limitation therefore is inapplicable to the monetary penalties imposed on Mr. Barrett by the TOSHA Review Commission, an administrative agency operating as part of the executive branch of government.

---

[3](...continued)
municipal courts).

## Conclusion

We hold that article VI, section 14 of the Tennessee Constitution does not apply to monetary penalties imposed by an administrative agency and therefore affirm the judgment of the Court of Appeals. The costs of this appeal shall be assessed against the appellant, Frank Barrett, and his surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE